UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WALTER COCKRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 2:08-CV-1944-SLB |
| | ) |
| A.C. LEGG PACKAGING CO., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 15.)[1] Plaintiff Walter Cockrell has sued his former employer, defendant A.C. Legg Packaging Co., alleging that defendant discriminated against him on the basis of race and his age. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 15), is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988))(emphasis added).

## II. STATEMENT OF FACTS

Defendant is in the business of making spice blends and seasonings. (Doc. 17, Ex. C at 10-11.) Its plant is divided into Large Blending Loading and Packaging Departments and Small Blending Loading and Packaging Departments. (*Id*. at 14-15, 17-19, ex. 3 at 6, ex.

8.) In 1990, defendant hired plaintiff to be the Assistant Supervisor in the Small Packaging Department. (Doc. 17, Ex. A at 18, 20-21.) At the time of his termination, plaintiff was the Lead Supervisor in the Small Blender Packaging Department. (*Id*. at 20-23; *id.*, Ex. C, ex. 3 at 3.) Plaintiff, an African-American male born in 1957, reported to Anthony Smith, an African-American male born in 1958, defendant's Plant Manager. (*Id.*, Ex. A at 48-49, 58, exs. 2, 10; *id*, Ex. B at 8, 169.)

Plaintiff was responsible for keeping track of the inventory levels of several supplies – gloves, tape, bags, 15" shrink wrap, 20" shrink wrap, drum liners, etc. – that were used in his Department on a daily basis. (Doc. 17, Ex. A at 59-61; *id.*, Ex. B at 34; *id.*, Ex. C, ex. 4; *id.*, Ex. I at 25.) Plaintiff testified that he was only responsible for keeping track of these items in his department and not for other departments. (Doc. 17, Ex. A at 60-61.) He denies that Smith or John Harmon,[2] former Director of Operations, ever told him he had a problem keeping up with his inventory items or that he would be terminated if he failed to keep up with his inventory items. (*Id*. at 63-64.) However, Smith and a number of other employees knew that Harmon had complained about plaintiff running out of his inventory items. *Id*., Ex. B at 54-56, 145, 168; *id*., Ex. C at 56; *id.*, Ex. E at 72; *id*. Ex. I at 43-44.) Smith testified that he was in a meeting with plaintiff and Harmon in June of 2007, when Harmon told plaintiff if he failed to perform his inventory counts in a timely manner plaintiff would be "out the door." (*Id*., Ex. B at 168.) Jerry Lee, Receiving Supervisor, testified that Harmon

---

[2]John Harmon left defendant in October 2007 and he passed away in January 2008.

told him that plaintiff had run out of his inventory items on a number of occasions and that he had specifically told plaintiff that "his job was in jeopardy over the inventory form." (*Id*., Ex. I at 43-44, 53.) Plaintiff denies anyone ever told him of any problem with the inventory. (Doc. 19 ¶ 3.)

Lee testified that, sometime in January 2008, he sent the last pallet of 15" shrink wrap to plaintiff and, at that time, he told plaintiff that was the last of the 15" shrink wrap. (*Id*., Ex. I at 37.) Plaintiff denies that Lee ever told him he was sending him the last of the shrink wrap. (Doc. 19, Ex. 1 ¶ 7.)

According to Smith, on or about January 11, 2008, someone called him to report that defendant was out of 15" shrink wrap. (Doc. 17, Ex. B at 13-14.) Smith believed that plaintiff was to blame for the shortage because he was the one who was responsible for keeping up with the amount of 15" shrink wrap on hand. (*Id*. at 26-27.) Smith discussed with Dennis Hulsey, Director of Human Resources, the problems that Harmon had with plaintiff and "trying to get him to keep his inventory counts current . . . so [Harmon] would know when to order whatever item . . . ." (*Id*. at 54; *see also id*., Ex. E at 64-66.) Hulsey ordered shrink wrap on January 11, 2008, for rush delivery. (*See* doc. 17, Ex. B at 28, 38, 43 and ex. 1; *id*., Ex. E at 47.)

Based on the incident of running out of shrink wrap, as well as reports that plaintiff had been sleeping on the job, his work area was constantly cluttered, and he had issues with learning the new computer system, Smith decided plaintiff should be terminated and he made

the recommendation to Hulsey that defendant terminate plaintiff. (*Id*., Ex. B at 9-10, 12, 26, 92, 93, 96, 113, 120; *id*., Ex. E at 59.) Hulsey informed James Purvis, President and CEO, about Smith's decision to terminate plaintiff. (*Id*., Ex. E at 72-73.) Purvis agreed that plaintiff should be terminated. (*Id*. at 78-79; *id*, Ex. C at 89-90.)

On January 31, 2008, Smith and Hulsey met with plaintiff, and Smith told plaintiff he was terminated because he was no longer an asset to defendant. (Doc. 17, Ex. A at 46, 76; *id*., Ex. B at 123.) Plaintiff was totally surprised when Smith told him he was terminated for failing to turn in order forms and because he had a dirty work area.[3] (*Id*., Ex. A at 47, 50-51.) He also testified, "I never ran out of shrink wrap or any other supplies I was responsible for the whole time I was lead supervisor," and "Jerry Lee never told me that he had sent the last pallet of wrap in stock to my department." (Doc. 19, Ex. 1 ¶¶ 3, 7.) He also denied that his area was cluttered or that Harmon or Smith ever told him his department was "messy, cluttered, or dirty." (*Id*. ¶ 4.)

After plaintiff's termination, Steve Rowell, a white male born in 1962, assumed plaintiff's inventory duties. (Doc. 17, Ex. F at 39-44.) Rowell testified that Smith and Hulsey told him he was the lead supervisor. (*Id*.) Rowell has been friends with Chuck Purvis, nephew of James Purvis and Vice-President of Sales, since childhood. (*Id*. at 8-9; *id*., Ex. C at 9.)

---

[3]Plaintiff testified that Smith did not terminate him because of his age or his race. (*Id*. at 49.)

At the time of plaintiff's termination, defendant was studying reorganizing. (*Id.*, Ex. C, ex. 3 at 3.) According to defendant, the original plan was to reduce the number of supervisors in Small Blender Packaging from two to one. (*Id.*) However, after plaintiff's termination, defendant decided to keep two supervisors – Rowell and Sam Sims, an African-American male born in 1948. (*Id.* at 5; *id.*, Ex. A, ex. 10.)

### III. <u>DISCUSSION</u>

Plaintiff alleges that defendant terminated him on the basis of his race, African-American, and his age, 51. Defendant contends that plaintiff cannot establish a prima facie case of race or age discrimination because he cannot show that he was replaced by someone outside his protected classes. It also contends that plaintiff cannot show that defendant's articulated reasons for his termination are unworthy of credence and that the real reason was his race or his age.

Plaintiff "bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008)(internal quotations and citation omitted). He may carry his burden by presenting either direct or circumstantial evidence of discrimination. *Id.* "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)(internal quotations and citations omitted). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence."

*Id.* (quotation omitted). "[S]tatements that are open to more than one interpretation do not constitute direct evidence of racial discrimination." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998). If a statement suggests, but does not prove, a discriminatory motive, it may be considered circumstantial evidence of discrimination. *Wilson*, 376 F.3d at 1086. The court notes that there is no direct evidence of discrimination in this case.

Absent direct evidence, a plaintiff may rely upon circumstantial evidence to prove discriminatory intent under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).

> *McDonnell Douglas* and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases. First, the plaintiff must establish a prima facie case of discrimination. . . . The burden [then] shift[s] to [the defendant] to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment. [When the defendant offers] admissible evidence sufficient for the trier of fact to conclude that [the plaintiff] was fired [for a legitimate, nondiscriminatory reason], the *McDonnell Douglas* framework--with its presumptions and burdens--disappear[s], and the sole remaining issue [is] discrimination vel non . . . .
>
> Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. That is, the plaintiff may attempt to establish that he was the victim of intentional

> discrimination by showing that the employer's proffered explanation is unworthy of credence.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43(2000)(internal citations and quotations omitted).

## A. PRIMA FACIE CASE

"To establish a prima facie case of discriminatory discharge, the plaintiff must show that [he] (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class." *Cuddeback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004)(citing *Reeves*, 530 U.S. at 142). Plaintiff may also prove a prima facie case of discriminatory discharge by proving "he is a member of a protected class, that he was qualified for the job from which he was fired, and 'that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained'." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984)(quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982) and citing *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282-84 (1976)(alterations in *Nix*); *see also Burke-Fowler*, 447 F.3d at 1323 ("When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, [the court] evaluates 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'")(quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

In age discrimination, plaintiff establishes a prima facie case of discrimination by showing that someone "substantially younger" than plaintiff was treated more favorably or replaced him.[4]  The Eleventh Circuit has held that a three-year difference in age is

---

[4]The Supreme Court held:

> As the very name "prima facie case" suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a "legally mandatory, rebuttable presumption," *Burdine*, *supra*, at 254, n. 7, 101 S. Ct., at 1094, n.7. The element of replacement by someone under 40 fails this requirement. The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out ***because of his age***.  Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old. Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case.
>
> Perhaps some courts have been induced to adopt the principle urged by respondent in order to avoid creating a prima facie case on the basis of very thin evidence-for example, the replacement of a 68-year-old by a 65-year-old. While the respondent's principle theoretically permits such thin evidence (consider the example above of a 40-year-old replaced by a 39-year-old), as a practical matter it will rarely do so, since the vast majority of age-discrimination claims come from older employees. In our view, however, the proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case requires "***evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion***.

"substantially younger" for purposes of establishing a prima facie case. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999)(citing *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997)(citing *Carter v. City of Miami*, 870 F.2d 578, 582-83 (11th Cir. 1989))).

In this case, plaintiff contends that he was replaced by Steve Rowell, who is white and five years younger than plaintiff.[5] Therefore, the court finds sufficient evidence to support a prima facie case of age and race discrimination.

## B. ARTICULATED REASONS

Defendant contends that Smith recommended plaintiff be terminated based on problems with his job performance, including (1) failure to monitor inventory resulting in the plant running out of 15" shrink wrap; (2) reports that he had been sleeping on the job; (3) a cluttered work area, and (4) problems with the computer. (Doc. 17, Ex. B at 120.) Hulsey

---

. . ." *Teamsters v. United States*, 431 U.S. 324, 358, 97 S. Ct. 1843, 1866, 52 L. Ed. 2d 396 (1977) (emphasis added). In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger. Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.

*O'Connor v. Consolidated Coin Caterers Corp.* 517 U.S. 308, 311-313 (1996)(emphasis in original).

[5]Defendant contends that plaintiff's job duties were assumed by both Rowell and Sam Sims. Sims, who is African-American, was 60 years old at the time. For purposes of deciding defendant's Motion for Summary Judgment, the court assumes that plaintiff was replaced by Rowell.

10

seconded Smith's recommendation and James Purvis approved it based on a lack of confidence in plaintiff's ability to perform his job. (*Id.*, Ex. C at 88.) Smith and Hulsey told plaintiff he was terminated because he was no longer an asset to the company.

## C. PRETEXT

"A plaintiff may show pretext by either directly persuading the court that a discriminatory reason motivated the employer, or by indirectly showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The relevant inquiry on the issue of pretext is "highly focused" – "The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537-38 (11th Cir. 1997)(citing *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

"To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision." *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995)(Johnson, J, concurring)(citations omitted); *see Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997)(Evidence of a

pretextual explanation can be established by showing "that the employer's proffered reasons are (1) factually baseless, (2) not the actual motivation for the [employment decision]; or (3) insufficient to motivate the [employment decision]."). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007)(quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir.2004)).

> Plaintiff argues:
>
> Here, [defendant] alleges that [plaintiff] failed to monitor the supplies in his department and that caused the shrink wrap to run out. [Plaintiff] has submitted evidence that he always timely and properly submitted his inventory reports and requests for replenishment and that he did not run out of the wrap in his department on the occasion in question. This is not merely questioning [defendant's] business judgment or generically saying "I was a good employee:" this is demonstrating that the concrete, factual accusation made against [plaintiff] that allegedly caused him to be fired could reasonably be believed to be false, which is sufficient for summary judgment.

(Doc. 20 at 21-22 [footnote omitted].) The court disagrees.

The court assumes that plaintiff accurately and timely reported the shrink wrap inventory. Nevertheless, the undisputed evidence is Smith received reports about depleted inventory of 15" shrink wrap. Indeed, the evidence is undisputed that defendant ordered more 15" shrink wrap for rush delivery. (*See* doc. 17, Ex. B at 28 and ex. 1.) The evidence shows that Smith, Hulsey, Purvis, and Lee all believed that plaintiff had a problem keeping up with his inventory. Plaintiff's evidence that he was only responsible for the inventory of

12

items in his department and that his department did not run out of 15" shrink wrap does not "meet head-on and rebut" defendant's showing that Smith believed the company ran out of 15" shrink wrap, that plaintiff was responsible, and that plaintiff had a continuing problem keeping up with his inventory items.

Likewise, plaintiff's denial of having a cluttered work area, denial of sleeping of in the job, and denial of problems with the computer system fail to address Smith's testimony that he believed plaintiff's work area was cluttered, that he had problems with the computer system, and that he had received reports of plaintiff sleeping on the job.

The court finds that plaintiff's evidence is insufficient to show that defendant's articulated reasons for his termination are unworthy of credence and that the real reason for his termination was age and/or race discrimination. Therefore, defendant's Motion for Summary Judgment is due to be granted.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment, (doc. 15), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 22nd day of March, 2010.

_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE